(47 Misc. Rep. 309.)

### TOMPKINS v. PALLAS et al.

(Supreme Court, Special Term, New York County. May, 1905.)

1. MUNICIPAL CORPORATIONS—PUBLIC PARKS—ADVERTISEMENTS ON FENCES.
    Greater New York Charter, Laws 1897, p. 213, c. 378, § 612, as amended by Laws 1901, p. 257, c. 466, imposes on a park commissioner the duty to maintain the beauty and utility of all parks and to execute measures necessary for ornamental purposes and for the beneficial uses of the people of the city. *Held*, that a grant by a commissioner of public parks of the right of painting and exhibiting on fences advertisements and advertising signs was illegal, though the fence was temporary and the city was to receive a pecuniary consideration.

2. SAME—SUIT BY TAXPAYER.
    A taxpayer may sue to restrain the use of fences in public parks for advertising purposes, though it is not shown that there has been any waste of the city's money or actual injury to its property.

Action by Calvin Tompkins against John J. Pallas and others for an injunction. Judgment for plaintiff.

Spencer, Ordway & Wierum (Nelson S. Spencer, of counsel), for plaintiff.

John J. Delany (William P. Burr, of counsel), for defendant John J. Pallas.

Chase Mellen, for defendants McNamara & Co.

SCOTT, J. This is a taxpayer's action to restrain the use for advertising purposes of a fence surrounding a portion of one of the public parks in the city of New York. The park in question is known as Bryant Park, and occupies the area bounded by Fortieth and Forty-Second streets, Fifth and Sixth avenues. On its easterly half there is in process of erection a large building for the New York Public Library. This site was previously occupied by a masonry reservoir, and the fence in question was erected by the contractor to whom was intrusted the work of removing the old reservoir and building the foundations for the library, under the terms of his contract, which required such a fence to be built for the purpose of inclosing the

library site during the period of construction of the building, after the completion of which it is to be removed. The fence is of wood from 8 to 12 feet in height, extending on Fifth avenue from Fortieth to Forty-Second street, a distance of about 455 feet, and extending a distance of about 474 feet westward from Fifth avenue on Fortieth and Forty-Second streets. The fence stands wholly on park property. The defendant Pallas, as commissioner of public parks, has entered into an agreement with the defendants McNamara and Hart, granting to them the right and privilege of painting and exhibiting upon the fence referred to advertisements, placards, or advertising signs, and the defendants McNamara and Hart have accordingly covered the fence with colored illustrated signs of crude artistic design, so displayed as to catch the eye and attract attention. Photographic representations of some of these signs are attached to the motion papers. They comprise advertisements of cheap cigars and Russian teas, of Irish whisky and Geneva gin, of a hair restorative and a complexion balm, of horses and automobiles, of shore dinners and pawnshops, of wall papers and hose supporters, of rye whisky and headache powders, of chiropodists and chemists, and of various other trades and commodities. Many of the advertisements are emphasized, if not embellished, by pictorial representations of the articles referred to therein. It was held, respecting a similar contract for advertising made by a former park commissioner to these same defendants McNamara and Hart, that the commissioner could not execute a grant of the privilege, but, at most, could only give a revocable license. McNamara v. Willcox, 73 App. Div. 451, 77 N. Y. Supp. 294. In that case it appeared that the immediate predecessor of the present defendant Pallas had revoked the license granted by his predecessor, and all the court was called upon to determine was the power to revoke, not the power to grant, the license.

It is the question of power to grant which now arises. It is, of course, elementary that a public administrative officer possesses no authority, except such as is expressly conferred upon him by statute or Constitution, or is to be fairly inferred therefrom, or is essential to the due performance of the declared purposes of his office. The general duties of the park commissioner with respect to public parks are set forth in section 612 of the city charter (Laws 1897, p. 213, c. 378, as amended by Laws 1901, p. 257, c. 466). They are "to maintain the beauty and utility of all such parks, squares and public places as are situated within his jurisdiction, and to execute * * * all measures for the improvement thereof for ornamental purposes and for the beneficial uses of the people of the city." Other provisions relative to the power and duties of the commissioner in streets and public places adjoining the parks, but not parts thereof, are not relevant to the present discussion and need not be quoted. It is to be noted that the two predominant ideas of the ends to be attained by the park commissioner are that the parks are to be so administered that their ornamental features are preserved and improved, and that they shall be fitted for the beneficial uses of the people. Any attempted use of the parks

or park property which does not make for one of these ends is without the power given to the park commissioner, and therefore illegal. If the question presented were merely one of taste, whether or not the advertisements were ornamental, the court could not, except, perhaps, in a case of obvious abuse, interfere with the judgment of the commissioner, but no pretense is made by any defendant that the advertisements are works of art or are maintained for ornamental purposes. Nor is it seriously contended that they aid in any way in the beneficial use of the park by the people. A public park has been defined by the Court of Appeals as "a piece of ground inclosed for purposes of pleasure, exercise, amusement, or ornament" (Perrin v. N. Y. C. R. R. Co., 36 N. Y. 120), and commissioners charged with the care of such parks have often been held justified in granting licenses for the maintenance within parks of such conveniences as would enhance the opportunities of the public to use and enjoy the parks as places of resort, amusement, recreation, and exercise. In every case, however, in which the exercise of this power has been sustained, it has been because the use authorized has in some way contributed to the use and enjoyment of the park by the public.

The defendant Pallas gives, in his affidavit opposing this motion, a list of some of the licenses heretofore granted with respect to the city's parks, including restaurants, refreshment stands, boats, stages, boathouses, and flower stands. This very list of itself shows that heretofore the issue of licenses has been limited to objects which would tend to afford additional facilities for the beneficial use and enjoyment of the parks by the public, and have come to be generally recognized as appropriate aids to the full enjoyment of public pleasure grounds. No such claim can be made for the advertisements of which the plaintiff complains. It is too obvious to require demonstration that business advertisements painted upon a board fence contribute nothing to the beneficial use of the park by the public. The defendant commissioner, then, had no authority, either by the express terms of any statute, or by any reasonable implication, to grant a license for the exhibition of the advertisements, and his attempt to do so was illegal and void. His act is not rendered legal because the fence is temporary and erected for a proper purpose. A case might easily be imagined where a careful commissioner of parks would deem it necessary to erect, during certain seasons, within a park, instead of upon its boundary, a fence or wall to protect plants or shrubbery from wind and weather. No one would seriously contend that the commissioner might lawfully permit such a fence or wall to be covered with private advertisements of cigars, liquors, hair tonics, and the like, merely because the erection of the fence was justifiable and its existence not intended to be permanent. Nor is it of moment that the city is to receive a pecuniary consideration from the advertisements. The parks are not intended primarily as sources of revenue, and an illegal use of them will not become legal because some revenue is derived from the use. In Wenk v. City of New York, 171 N. Y. 607, 64 N. E. 509, a taxpayer's action was upheld, although one of its purposes was to re-

strain the receipt by the city of the rent reserved under what was alleged to be an unlawful lease. In Vilias v. Featherson, 94 App. Div. 259, 87 N. Y. Supp. 1094, it was held that the commissioner of docks had no power to lease even a small portion of a marginal street for purposes other than those appropriate to its use as a dock or wharf, and the fact that the lease or license issued by him secured a certain revenue to the city did not legalize his unauthorized act.

It is objected, however, that, although the commissioner's act may be unauthorized and illegal, the plaintiff as a taxpayer has no standing to maintain this action, because it is not shown that there has been any waste of the city's money or actual injury to its property. The statute authorizes an action by a taxpayer (1) to prevent any illegal official act, or (2) to prevent waste or injury to the public property or funds. Laws 1892, p. 620, c. 301. In Warrin v. Baldwin, 105 N. Y. 534, 12 N. E. 49, it was said that, if the act complained of is illegal, "the plaintiff is entitled to sue to prevent the meditated violation of law, irrespective of the consequences of such violation. The statute assumes that any illegal official act is or may be injurious to the corporation when done by its servant, and allows him to be restrained simply because of the illegality." In Bush v. Coler, 60 App. Div. 56, 69 N. Y. Supp. 770, the court points out that the statute gives to the taxpayer two distinct causes of action, one of which is said to be to prevent an illegal act on the part of an officer, which does not depend upon whether such illegal act will cause any injury to such municipal corporation or not. In Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471, an injunction was sustained to prevent an unauthorized act by public officers, although the court distinctly found that the complaint contained no sufficient allegations of waste. In Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106, the court recognized and pointed out the distinction between the two causes of action given by the statute, and held that, where an illegal act was shown, it was not necessary also to show waste. Many other cases might be cited wherein taxpayer's actions have been sustained to restrain illegal acts, although it was not made to appear that actual waste or injury to the public property would result.

The defendants much rely upon Rogers v. O'Brien, 153 N. Y. 357, 47 N. E. 456, wherein are to be found expressions to the effect that the taxpayers' act may only be availed of when the act contemplated is not only illegal, but, if performed, would tend to produce public injury and promote public mischief. If by public injury and public mischief the learned judge meant that which is known in the statute as "waste and injury" to the public property or funds, he must be held to have been overruled by later opinions of the same court in cases in which the question was directly involved. It is not probable that he did so mean, when the facts upon which he was writing are taken into account. It was perfectly apparent in that case that the plaintiff sought to prevent the use of the act to his own personal interests and to the detriment and loss of the city.

In any event the great weight of authority is opposed to the dictum relied upon, if it must be read as the defendants would read it.

I therefore conclude that the grant of the license to the defendants McNamara and Hart was unauthorized, illegal, and void; that the plaintiff as a taxpayer is entitled to maintain this action; and that an injunction should issue restraining the defendants and each of them from using or permitting the use of the fence in question for the exhibition of advertisements, and requiring them to remove the advertisements now displayed thereon, with $10 costs of motion to the plaintiff.

Judgment accordingly.