BIRD v. GROUT, Comptroller, et al.

TRITT v. SAME.

(Supreme Court, Appellate Division, Second Department.  June 9, 1905.)

1. CONVEYANCES FOR SPECIFIED USE—MUNICIPALITIES—MARKET PURPOSES—
ABATTOIR—WORDS AND PHRASES.

The erection and maintenance of a slaughter house is not a "market purpose" within the meaning of a conveyance to a city of land "for market purposes, and for ships, canals, and piers and other public works, in connection with such market purposes."

2. SAME—PUBLIC MARKET.

Laws 1890, p. 808, c. 446, as amended by Laws 1892, p. 650, c. 319, authorizes the city of Brooklyn to purchase and acquire certain property "for the purposes of a public market and the business thereunto appertaining," and to "erect and maintain a public market on said lands, * * * and also in connection with such public market for market purposes to construct such canals, basins, docks and piers on said lands." Held, that the land was to be devoted to a particular use or class of uses, and not to be applied to any municipal purpose which might fall within the general scope of the city government.

3. SAME—ILLEGAL USE—REMEDY OF TAXPAYER—INJUNCTION.

The lease of the land by the municipal authorities for use as an abattoir was an illegal official act, which a taxpayer might prevent by injunction.

4. SAME.

Sanitary Code City of New York, § 82, providing that "no person shall kill or dress any animal or meat in any market," was continued in force by Revised Greater New York Charter (volume 3, Laws 1901, p. 499, c. 466) § 1172, declaring that the sanitary code in force January 1, 1902, shall be binding and in force in the city of New York, and continue to be so, etc. Held, that the term "market" in said section 82 was broad enough to apply, and was intended to apply, to any premises exclusively devoted to market purposes, and hence the prohibition included the lands acquired by the city of Brooklyn under said conveyance.

Appeal from Special Term, Kings County.

Actions by William E. Bird, Jr., against Edward M. Grout, as comptroller of the city of New York, and another, and by George W. Tritt against the same defendants.  From a judgment for defendants in each case, plaintiffs appeal.  Judgment in each case reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

J. Hampden Dougherty, for appellant Bird.
Frank Brundage, for appellant Tritt.
Hugo Hirsh, for respondent May.

WILLARD BARTLETT, J.  The plaintiff in each of these cases brought suit as a taxpayer to restrain the comptroller of the city of New York from leasing a portion of the Wallabout Market lands in the borough of Brooklyn to the defendant Benjamin May for the purpose of erecting and maintaining thereon an abattoir or slaughter house for the killing of cattle, hogs, and sheep.  These lands were acquired by the city of Brooklyn from the United States under the authority of an act of the Legislature providing for their

acquisition, and. an act of Congress empowering the Secretary of the Navy to sell and convey the property "for market purposes, and for slips, canals, and piers, and other public works, in connection with such market purposes." The habendum clause of the conveyance executed by the Secretary of the Navy expressly declared that the city of Brooklyn was to take the premises thereby granted for such purposes; and it was contended in the court below that by virtue of this provision in the deed the city's title would immediately terminate if a lease should be made for an unauthorized use, and the title would revert to the United States. The learned judge at Special Term, however, held that the habendum for market purposes did not restrict the grantee's right to put the land to any use to which it saw fit. He therefore decided that it was not illegal for the comptroller, as the representative of the municipal corporation which has succeeded to the rights of the city of Brooklyn, to lease a portion of the lands thus acquired for the purposes of a slaughter house, although he expressed the opinion that this was not a market purpose within the meaning of the conveyance. These views led to a dismissal of the complaint upon the merits, and the plaintiffs have appealed.

We agree with the trial judge that the erection and maintenance of a slaughter house is not a market purpose within the meaning of the conveyance; nor is it such within the meaning of any of the legislation, either federal or state, relative to the Wallabout Market lands. We find ourselves compelled to differ from him, however, as to the authority of the comptroller to grant the proposed lease for an abattoir. Although the city of Brooklyn, under the act of the Legislature and the act of Congress and the deed from the Secretary of the Navy, undoubtedly acquired the fee of these lands, it did not thereby become empowered to put them to any use to which it saw fit, in the absence of legislative sanction. The authority for the acquisition of the lands was conferred by chapter 446, p. 808, of the Laws of 1890, as amended by chapter 319, p. 650, of the Laws of 1892, the first section of which reads as follows, the amendment of 1892 being indicated in italics:

"The city of Brooklyn, by its mayor, comptroller and auditor, is hereby authorized to purchase and acquire title to the following property in the city of Brooklyn, belonging to the United States of America, and bounded and described as follows, to wit: [Here follows a description of the plot of ground which the Legislature authorized the city of Brooklyn to purchase, and which includes the premises that are the subject of this action]; said land to be purchased and acquired for the purposes of a public market and the business thereunto appertaining. The said city of Brooklyn, is authorized to erect and to maintain a public market on said lands or so much thereof as may be purchased or acquired as aforesaid, *and also in connection with such public market for market purposes to construct such canals, basins, docks and piers on said land or so much thereof as may be purchased and acquired as aforesaid.*"

The language quoted indicates unmistakably the intention of the Legislature that the lands to be acquired were to be devoted to a particular use or class of uses, and not to be applied to any municipal purpose which might fall within the general scope of the city government. The case thus presented seems to us indis-

tinguishable from that which arose in Sweet v. Buffalo, N. Y. and Phil. Ry. Co., 79 N. Y. 293, 301. There the act of the Legislature under consideration authorized the city of Buffalo to acquire certain lands for the purpose of maintaining thereon, along the shore of Lake Erie, a sea wall or breakwater, and the question was whether or not the city took the fee of the lands under the act. In holding that a fee vested in the city, the Court of Appeals, speaking through Andrews, J., said:

"It is claimed that the interest taken by the city is for a special purpose, to wit, the maintaining and protecting of a sea wall, and this purpose is repeatedly declared in the act. But we perceive no inconsistency in declaring the particular use for which the city is to take and hold the land, and at the same time providing that it should take a fee. The particular use declared is in the nature of a trust ingrafted on the fee, and the people, through the proper officer, could compel the city to observe the trust, or restrain it from any use of the land inconsistent with it."

This decision was reaffirmed in Matter of Water Com'rs of Amsterdam, 96 N. Y. 351, 359, and the doctrine which it asserts is the same as that upon which the Court of Appeals proceeded in The Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70, where it was held that the lands vested in the city of Brooklyn by the act of 1861 for public use as a park were held in trust for that purpose, and could not be conveyed away without express legislative authority. In the light of the principles which were the basis of decision in the cases cited, the Wallabout Market lands must be deemed to be held by the city of New York, as the successor of the city of Brooklyn, under a trust for public use for market purposes only; the appropriation of any portion thereof for the erection and maintenance of a slaughter house thereon is not a market purpose; and it follows that the lease of any portion by the municipal authorities for use as an abattoir is an illegal official act, which a taxpayer is entitled to prevent by injunction.

We think that these actions may be maintained on another ground. Section 82 of the sanitary code of the city of New York provides that no person shall kill or dress any animal or meat in any market. The sanitary code has legislative and legal sanction, being recognized and adopted by the original and amended charter of the city of New York. People ex rel. Lieberman v. Vandecarr, 175 N. Y. 440, 67 N. E. 913. Section 1172 of the Revised Greater New York Charter (chapter 466, p. 499, vol. 3, of the Laws of 1901) declares that the sanitary code in force on January 1, 1902, shall be binding and in force in the city of New York, and continue to be so, except as the same may from time to time be revised, altered, amended, or annulled as therein provided. Section 82 of the sanitary code was continued in force by this provision, and does not appear to have been revised, altered, amended, or annulled.

There is a finding in the decision of the court at Special Term to the effect that the department of health has granted the defendant May a permit to slaughter cattle, sheep, lambs, and calves on the Wallabout Market lands in question here; but we do not understand that this permit in terms or in effect purports to be an amend-

ment to the sanitary code. We think the term "market" in section 82 of that Code is broad enough to apply, and was intended to apply, to any premises exclusively devoted to market purposes, and hence that the prohibition is broad enough to include all the Wallabout Market lands acquired by the city of Brooklyn in trust for market purposes.

These views require a reversal of the judgment in each case. All concur.

---

### In re BUCKINGHAM'S ESTATE.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

WILLS—TRANSFER TAX—EXERCISE OF APPOINTMENT.

Appeal from Order of Surrogate of Dutchess County.