**CITY OF BEAUMONT et al. v. MATTHEW CARTWRIGHT LAND & IMPROVEMENT CO. et al. (No. 561.)**

(Court of Civil Appeals of Texas. Beaumont. July 15, 1920. Rehearing Denied Oct. 13, 1920.)

**1. Municipal corporations ⬠921(3) — Bonds issued for acquisition and improvement of parks could not be used otherwise.**

Bonds issued by a city by virtue of an election pursuant to ordinance for the acquisition and improvement of lands either within or without the city for public parks could not be used for any other purpose.

**2. Municipal corporations ⬠918(5) — City council not bound by result of election authorizing issuance of bonds for acquisition of parks.**

Result of election submitting to qualified voters of city the selection of a park site to be purchased with the proceeds of bonds authorized *held* merely advisory; the city council not being bound by its result, but entitled to disregard the same and make such purchase of lands for parks as appealed to its judgment.

**3. Municipal corporations ⬠721(1) — Land purchased with park bonds became impressed with purpose.**

Land purchased by city with bonds issued solely for the acquisition and improvement of lands for parks became impressed with park purposes, and cannot be used by the city for any other purpose, though the deed to the city was a general warranty deed without reservations and without covenants dedicating the lands to park purposes.

**4. Municipal corporations ⬠721(1)—Sellers of land to city held to have parted with all interest, and to have no vested right in its improvement for park.**

Having sold land to a city for a valuable consideration, with no covenant dedicating it to any special purpose, though the land was paid for with park bonds, the sellers parted with all their interest, and had no vested right in the improvement of the land for park purposes and in the maintenance of a park on it.

**5. Constitutional law ⬠93(1)—Sellers of land to city for park without vested right in maintenance.**

If a city has authority to sell its parks, the sellers of land to the city for park purposes have no vested right in the maintenance of a park on the land.

**6. Municipal corporations ⬠995(1)—Citizens and taxpayers, sellers of land for park, can enjoin wrongful diversion of fund.**

Where a city purchased land with park bonds, but the sellers did not make any reservation or embody in their conveyance any covenants dedicating the land to park purposes, and so have no vested rights to compel use of the land for a park, nevertheless, as citizens

and taxpayers, they can sue to enjoin the city from wrongful diversion of such park fund, and from expending the funds except as provided by charter.

**7. Municipal corporations ⬠63(1)—City council controls distribution of park fund free from judicial control.**

Where the purpose of bonds was to enable the city issuing them to acquire and improve lands for public parks, the matters of how much of the fund was to be spent for the purchase of lands, and how much for their improvement as parks, were of necessity within the control of the city council, whose discretion in the premises is free from judicial control.

**8. Municipal corporations ⬠224 — Purchase and improvement of land for park permanent acts requiring ordinance.**

Under Charter of the City of Beaumont, §§ 34, 41, 45, 76, purchase and improvement by city of land for public park with funds raised by sale of interest-bearing bonds are acts of a permanent nature, legislation in regard to which must be evidenced by ordinance duly passed by the city council, and not by its mere resolution.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Suit by the Matthew Cartwright Land & Improvement Company and others against the City of Beaumont and others. From a judgment for plaintiffs, defendants appeal. Affirmed in so far as granting temporary writ of injunction; otherwise reversed and reformed.

Jno. M. Conley, A. L. Calhoun, and J. D. Campbell, all of Beaumont, for appellants.

F. J. & C. T. Duff and P. A. Dowlen, all of Beaumont, for appellees.

WALKER, J. By virtue of an election held on the 7th day of August, 1917, the city council of the city of Beaumont issued municipal bonds in the sum of $100,000, the proceeds of the sale thereof to be used for the purpose of "acquiring and improving lands either within or without the limits of the city of Beaumont for public parks." In order to ascertain the will of the people as to the location of the park thus to be acquired, this question was duly submitted to the qualified voters of the city, and the election resulted in favor of the "Cartwright site." Accordingly the city purchased from the Cartwrights 100 acres of land and paid for the same by delivering to the Cartwrights $50,000 in bonds authorized by virtue of the aforesaid election. Later, by resolution of the city council, it was proposed to purchase another tract from W. P. H. McFaddin for $50,000, to be paid for by delivering to McFaddin the unsold portion of the aforesaid park bonds in the sum of $50,-

---

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

000. On prayer of the Cartwrights, W. H. Davidson, judge of the Fifty-Eighth judicial district, granted a temporary injunction against the city of Beaumont, its council and its treasurer, restraining them from consummating this deal, and also from using the unsold $50,000 of the park bonds for any purpose other than to improve the lands bought by the city from the plaintiffs. On a hearing in chambers appellants' motion to dissolve this order was denied. Without following the order of the assignments of error, we submit the following discussion of the different questions presented:

[1] 1. The bonds issued by virtue of the election held August 7, 1917, could not be used by the city council for any purpose except the "acquiring and improving of lands either within or without the limits of the city of Beaumont for public parks"; this being the purpose of said bonds, as provided by ordinance submitting the issue to the people.

[2] 2. The result of the election submitting to the qualified voters of the city the selection of the park site to be purchased with the proceeds of the bonds was only advisory, and the city council was in no way bound by the result of said election, but could have disregarded the same and made such purchases as appealed to its best judgment. Tyree v. Road District No. 5, 199 S. W. 646; 1 Dillon, Municipal Corporations (5th Ed.) 460. Appellees concede the correctness of this proposition, and we have stated it only because it seems to be involved in the ruling of the judge on the special exceptions of appellants.

[3] 3. The deed from the Cartwrights to the city is a general warranty deed, without reservations, and without any covenants dedicating the land to park purposes, or any other purpose. However, having been purchased with park bonds, it thereby became impressed with park purposes, and cannot be used by the city for any other purpose. Compton v. Waco Bridge Co., 62 Tex. 715; 3 McQuillin, Municipal Corporations, § 1141, p. 2575.

[4] 4. Having sold this land for a valuable consideration, with no covenant dedicating it to any special purpose, the Cartwrights have parted with all their interest therein, and the trial judge was in error in concluding that the Cartwrights, "as the vendors of said land, have a vested right in the improving of said land for park purposes and in the maintaining of a park on said land." Had the Cartwrights so desired, they could have stated in the deed to the city that this land was to be held in perpetuity for park purposes, and that the city should proceed to improve the same from the sale of the balance of the issue of park bonds, but this they did not do. Having purchased this land with its park funds, the city holds title to the same by authority of article 345 of its ordinances, which provides:

"Article 345. *Authorizing City to Own and Operate Public Parks.*—That the city may purchase, acquire construct and maintain, and operate and own any number of public parks, for the benefit of its citizens, either inside or outside the city of Beaumont, as provided by section 45, Number 4 of its city charter."

There is nothing then in the city's title to this property taking it out of section 98 of its charter, which provides:

"The rights of the city in and to its * * * parks * * * are hereby declared to be inalienable except by a two-thirds vote of all members elected to the city council. * * *"

[5] If the city has the authority to sell its parks, it must follow that the Cartwrights cannot have a vested right "in the maintaining of a park on said land." 3 McQuillin, Municipal Corporations, § 1155; Seattle Land Co. v. Seattle, 37 Wash. 274, 79 Pac. 780.

[6] 5. While relators' cause of action, in so far as it is based on the fact that they claimed the vested rights found in their favor by the court, must fail, yet, as citizens and taxpayers of the city of Beaumont, they can maintain this action to enjoin the city from a wrongful diversion of this park fund, and from expending the funds except in the manner provided by its charter. Grayson County v. Harold, 202 S. W. 162; Moore v. Coffman (Sup.) 200 S. W. 374; Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1114.

[7] 6. As stated above, the purpose of these bonds was to acquire and improve lands for public parks. There is nothing in the submission of this cause suggesting a division of the funds; that is, how much was to be spent for purchasing park lands and how much for improving the same. There is nothing denoting the character of improvements to be made. These matters must, of necessity, be controlled by the city council, and in the exercise of this discretion they are free from judicial control. East St. Louis v. United States ex rel. Zebley, 110 U. S. 321, 4 Sup. Ct. 21, 28 L. Ed. 162; Helena Waterworks Co. v. Helena, 31 Mont. 243, 78 Pac. 220. In decreeing "that this court shall and does retain jurisdiction over this case to the end that the injunction herein ordered issued may be changed or modified when it is made to appear to the court that reasonable and bona fide compliance has been made for uses and purposes for which said land was purchased," all discretion is taken from the city in the expenditure of this park fund. The court reserved to itself to determine what was "a reasonable and bona fide compliance" with the provisions of the bond issue. This would imply that the court could determine the character of improvements, where the same were to be located on the 100 acres, and the amount to be so expended. Then what is left to the city council? Nothing except to employ the contractors, pay the bills, and report to the court. Suppose the court should decide that it would require an expenditure

of all the unsold bonds to make such improvements as would constitute a reasonable compliance "with the uses and purposes for which said land was purchased." It clearly appears from this record that the original purpose of these bonds, as understood by all the members of the city council, was to purchase the Oaks Parkdale site at a cost of approximately $90,000. There is no suggestion from the appellees in this case that the city council did not have authority to consummate this deal. Had they done so, then only $10,000 would have been left for improvements. It would follow that the court has required the expenditure of $40,000 more than the city council, in the lawful exercise of its discretion, originally intended to expend for this purpose. Can it be said, then, having made this one purchase for $40,000 less than they originally expected to pay for a new park site, the city council has exhausted its power to acquire "lands" from the proceeds of these bonds? When the courts interfere with the discretion vested in a city council in matters of this character, they must constitute themselves a legislative body for the city, and must execute for the city the duties directly imposed by law on their duly elected representatives. We do not believe that this power rests with the courts. They can look into the action of the city council and restrain them from wrongfully diverting funds, because such an act is illegal and is not the lawful exercise of discretion, but the courts cannot buy parks for the city, nor improve the same, nor restrain the city from lawfully disposing of parks, nor read into park deeds covenants which would make impossible the alienation of park lands, bought on the open market for a valuable consideration and paid for with park funds. It is no answer to this proposition to say that the Cartwrights owned other property near this 100 acres, and that they sold this land to the city at less than its market value because of the enhanced value that a park would give to their other lands. If this was part of the consideration, it should have been stipulated in the deed. Suppose in the lawful exercise of their discretion the city council should determine that this land was not a suitable site for a permanent park. This discretion is clearly vested in them. Suppose they should decide to sell this park site. This discretion is also vested in them. Might not the enforcement of this decree result in a loss to the city of all the improvements placed thereon by the court? In the matter of the execution of the purposes of this bond issue there cannot exist in the city council a judicially controlled discretion. These funds were issued for a dual purpose, to "buy" and to "improve" parks. The facts of this case are clearly distinguishable from the facts in Simpson v. City of Nacogdoches, 152 S. W. 858, but we believe the principle announced in that case controls this case. The citizens of Nacogdoches voted a bond issue for the purpose of "purchasing and constructing an electric light plant" for said city. Speaking for the court, Chief Justice Pleasants said:

"The proposition to purchase might have been submitted separately from the proposition to construct an electric light plant, but we do not think the council was required to submit separate propositions for the purpose of ascertaining the choice of the voters as to the method of acquiring a light plant. Under the proposition submitted, the voter who cast his vote in favor of the bonds must have understood that by so voting he left it to the judgment of the council whether the bonds should be used for purchasing or constructing a light plant, or for both purposes."

And here, in voting for these bonds, the voter must have understood that the expenditure of this fund rested with the city council, and it was for them to determine whether all the funds should be used in the purchase of park sites or in the improvement of park sites then owned by the city, or part in the purchase of new park sites and the balance in improving the same or in improving the old sites. If the fund was not sufficient to buy all the park sites desired by the city council, and to improve the same, some authority somewhere must be vested with the discretion of expending this money. This discretion is vested in the city council, and as long as this fund is not diverted from park purposes, this discretion cannot be interfered with by the courts.

Appellees advance the following cross-assignment of error:

"The appellees requested the court to make the following additional conclusion of law, which the court refused to do, and the appellees excepted and here presents as their first counter assignment of error: 'I conclude as a matter of law that the purchasing and improving of land for a public park, for which purchase and improvement interest-bearing bonds of the city in a large amount to be given are acts of a permanent nature affecting the government and welfare of the city, and such legislation must be evidenced by an ordinance duly passed by the city council, and cannot be done by a resolution of the council.'"

Under this assignment they advance this proposition:

"The purchasing of land for a public park with interest-bearing bonds in the sum of $50,000 is an act of a permanent nature affecting the government and welfare of the city, and such legislation must be evidenced by an ordinance duly passed by the city council, and cannot be done by a mere resolution, the court therefore properly issued this injunction restraining the investment of the $50,000 in bonds by virtue of said resolution."

[8] In sustaining this assignment, we adopt the statement and argument of appellees advanced under this proposition, as follows:

"Section 34 provides that the city of Beaumont shall have the right by ordinance duly passed by the council to exercise such powers as may be necessary under the law for the following purposes: [Then follows seven pages of printed matter of the different things that the city may do, including virtually all subjects of legislation.]

"Section 41 provides that the styles of the ordinance shall be: 'Be it ordained by the city council of the city of Beaumont.'

"Section 45 provides that the city council shall have power by ordinance to levy and collect an annual tax not to exceed a certain named amount. The fourth subdivision of this section authorizes the levy of tax not exceeding 33 cents on each $100 valuation of property for several purposes including public parks, either inside or outside the city limits. It is further provided in this section that money raised by the issuance of bonds shall never be used or applied to any other purpose, and provides further that the city council shall not levy said tax or any portion thereof until the city, by a proper ordinance duly passed, first determines to purchase the park.

"Reference to the different sections of the charter will disclose that an ordinance is required for all things of a permanent nature; whereas things of a temporary nature, such as the repairs of sidewalks, and gutters, may be done by resolution

"Section 76 provides that the city council shall have power by ordinance to do all acts and make all regulations which may be necessary or expedient for the promotion of health. This section contains some 35 or 40 other things which the city council may do by ordinance.

"The purchasing of land and improving same as a park is designated in both of the ordinances as being in aid of the public health.

### "Authorities and Argument.

"In section 572, vol. 2, Dillon on Municipal Corporations, the distinction between the acts of a temporary nature and how they may be provided for is discussed and clearly set out, and all acts of a permanent nature involving a rule of conduct or permanently affecting the government and welfare of the city must be evidenced by ordinances duly passed. The note under this section is very conclusive on this point.

"Cyc. vol. 28, p. 348, makes this distinction: 'Ordinance is a continuing regulation, while "resolution," although sometime held to enact a law, is usually declared not to be the equivalent of an ordinance, but rather an act of a temporary character not prescribing a permanent rule of government. Authority granted to a city council to prescribe regulation by an ordinance does not empower it to regulate the subject by mere resolution, and a resolution adopted for that purpose is null and void.'

"In the case of Mills v. City of San Antonio, 65 S. W. 1121, it was held that under article 42 of the charter of that city, providing that the city council has the care, management, and control of the city, and that the city council shall have the power by ordinance to perform the many acts enumerated, among which was section 57, under which the appellant in that case claimed the city council had the power to act, that in such matters the city could only be bound by an ordinance.

"Under the section of the charter authorizing the issuance of bonds for park purposes, it is specially provided that the decision to purchase must first be declared by ordinance. Under that section of the charter authorizing general legislation for municipal purposes it is provided that it must be done by ordinance; in fact, there is not a single act of a permanent nature that is not required to be done by ordinance; hence we contend that the resolution authorizing the expenditure of $50,000 in the purchase of the McFaddin land for a public park was void."

From what we have said it follows that the judgment granting a temporary writ of injunction must be affirmed on the sole ground that the resolution under which the city council was purporting to act was void and did not clothe the officers of the city with authority to purchase the property from McFaddin. In all other respects the judgment appealed from is reversed and here reformed, limiting the injunction to the ground just stated. It is our further order that this decree be certified to the court below, and, upon a proper showing that the city has determined, by ordinance duly passed, to purchase the McFaddin property, that this writ be dissolved.