### MAYER v. KOSTES et al.
#### No. 10133.

Court of Civil Appeals of Texas. Galveston.
March 14, 1934.

Rehearing Denied April 12, 1934.

petition therefor and, without hearing any evidence, refusing the appellant a temporary injunction restraining appellees pending final trial from renting a small space in the new Farmers' Market of the city of Houston for such a purpose, and from constructing or maintaining a restaurant thereon; the prayer being that such restraint be perpetuated on ultimate hearing on the facts.

Merely declaring himself to be a property taxpayer, citizen, and voter of the city of Houston, no other interest, right, or capacity in himself being asserted, in material substance appellant alleges:

That the market was established by the city of Houston with proceeds of bonds issued in the aggregate sum of $750,000, the first $350,000 of it "for the purpose of constructing a complete Farmers' Market, the later $400,000 thereof for the purchase of additional land and the construction of permanent improvements thereon," the issuance of the bonds having been authorized for such purpose by the voters of the city; that all available space in the market is used for the purpose for which it was so constructed and the bonds issued—that is, for the display and sale of farm products by the producers thereof—and that all available space therein is inadequate for that purpose; that the city either has leased or is about to lease on a month to month basis, terminable upon thirty days' notice, a certain 935 square feet of floor space, being an oblong stall approximately 55 feet in length by 17 feet in width, in this market, to the appellee John Kostes for restaurant purposes, which is the most desirable and convenient space therein for display and sale of farm products as well as being necessary for the use for which the bonds were voted and the market constructed; that Kostes has been placed in possession of this space and has commenced the construction of a permanent substantial structure therein to be used for restaurant purposes, there being no necessity for the establishment of a restaurant in the market, for the reason that such needs of both the producers and consumers using the facilities thereof are already adequately supplied; that under these circumstances the city council is without power to lease or permit the use of space within the Farmers' Market for restaurant purposes so contrary to the purpose for which the bonds were voted and issued and the market built; that by the issuance of such bonds, pursuant to authority granted at elections by the voters and taxpayers of the city for the purpose of

R. R. Lewis, R. W. Franklin, W. M. Holland, and Sewall Myer, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from an order of the trial court sustaining a general demurrer to the

the Farmers' Market, a binding contract was created between the voters and the taxpayers and the city itself which prevents the contemplated use of the market for restaurant purposes; that since the erection of the market the city council has provided by ordinance that applicants for space therein must prove themselves to be bona fide producers of farm products, or legitimate agents of reputable farmers' associations; that, if the council has any legal right or authority to exercise discretion in granting the lease in question, then its act, in view of the facts and circumstances thus pleaded, constituted a clear abuse of that discretion; that the Houston city charter provides that the use, easement, control, and ownership of all public property within the city is inalienable, except by ordinance, and that no ordinance has been passed providing for such a lease of this property as is herein charged to have been undertaken.

The right of appellant as such an individual to bring the action to so enjoin the mayor and members of the city council is primarily grounded by him upon article 9, § 1, of the Charter of the City of Houston, which provides that any citizen so situated "may maintain an action in the proper court to restrain the execution of any illegal, unauthorized, or fraudulent contract or agreement on behalf of said city," the legal effect of which, he contends, is to authorize such a suit by a taxpayer, even though he shows no interest different from that of any other taxpayer, citing Tompkins v. Pallas, 47 Misc. 309, 95 N. Y. S. 875, in support of that conclusion.

He further urges:

(1) That, even in the absence of a statute or charter provision, a taxpayer may enjoin a diversion of the proceeds of bonds authorized by the voters to be used for a particular purpose, that being a breach of trust on the part of a public official; his supporting authorities being Fletcher v. Howard, 120 Tex. 289, 39 S.W.(2d) 32, 40 S.W.(2d) 52; Moore v. Coffman, 109 Tex. 93, 200 S. W. 374 and cases there cited; Beaumont v. Improvement Co. (Tex. Civ. App.) 224 S. W. 589; Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 732.

(2) That the council has no power to lease space in such building for other than market purposes, where that space is both used and needed for the purpose for which the bonds were issued and a market erected and established; the subjoined authorities being City of Mission v. Richards (Tex. Civ. App.) 274 S. W. 269; McReynolds v. Broussard, 18 Tex. Civ. App. 409, 45 S. W. 760; Sugar v. City of Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 732; Nerlien v. Village of Brooton, 94 Minn. 361, 102 N. W. 867; Bird v. Grout (Tritt v. Grout) 106 App. Div. 159, 94 N. Y. S. 127; Tompkins v. Pallas, 47 Misc. 309, 95 N. Y. S. 875; Vilias v. Featherson, 94 App. Div. 259, 87 N. Y. S. 1094; McQuillin, Municipal Corporations, vol. 7 (1921 Sup.) § 1145.

(3) That the city council has no power to lease the space in question, except by ordinance, and, since no ordinance has been passed, its action in allowing the appellee John Kostes to go into possession under a lease, or contemplated lease, is illegal and void, citing Houston City Charter, art. 2, § 17; Williams v. Hylan, 227 N. Y. S. 392, 223 App. Div. 48; Id., 215 N. Y. S. 101, 126 Misc. 807; Ashton v. Noble, 65 Okl. 45, 162 P. 784; 1 Words and Phrases, First Series, 306; 1 Words and Phrases, Second Series, 180; 1 Words and Phrases, Third Series, 394; 1 Words and Phrases, Fourth Series, 141, and cases cited; Mehlman v. Atlantic Amusement Co., 65 Misc. 25, 119 N. Y. S. 222; City of Beaumont v. Matthew Co. (Tex. Civ. App.) 224 S. W. 589; American Construction Co. v. Seelig, 104 Tex. 16, 133 S. W. 429; City of Panhandle v. Bickle (Tex. Civ. App.) 31 S.W.(2d) 843; City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S. W. 735.

■ Despite the axiomatic rule that the matters of actual fact thus alleged must be taken as true under the legal effect of the general demurrer, this court agrees with the learned trial judge that, applying to them that uniformly strict construction to which bills for injunction must be subjected [Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153; Thomas v. Bunch (Tex. Civ. App.) 41 S. W.(2d) 359; Town of Refugio v. Strauch (Tex. Com. App.) 29 S.W.(2d) 1041], they fail to entitle him to the coveted writ.

■ In the first place, it seems clear from the face of the petition that this is not such a suit as, within the purview of article 9, § 1, of the city charter, nor of the other authorities invoked in that connection, may be maintained by a mere taxpaying citizen sustaining no other relation toward the matter involved, since the agreement assailed is not shown to be either illegal, unauthorized, or fraudulent, but rather, from all the allegations, to be one the city authorities were in good faith projecting, and were legally authorized to make by other provisions of the charter so appealed to against it.

■ In the second place, he does not successfully negative—that is, through specific averments of fact rather than ipse dixit, conclusions on the part of the pleader—other coexisting conditions that prevent the extension of injunctive restraint; in other words, the governing body of Houston, a home rule city, even though its powers as such are yet subject to general and constitutional provisions [Keel v. Pulte (Tex. Com. App.) 10 S.W.(2d) 694], is nevertheless expressly granted the power through articles 2, 3, 4, and others, of the city charter, to exercise all authority necessary to complete management and control of all municipal property, inclusive of that having to do with the construction, ownership, and maintenance of public buildings.

■ In the third place, there is no inhibited alienation on the part of the city council of "the right of control, easement, user, and ownership of and title to" this small space within the meaning of the invoked article 2, § 17, of the charter, especially so since, under the detailed averments, it was only temporarily rented "on a month-to-month basis, terminable upon 30 days' notice," which is expressly authorized by section 10 of the same article under the specific title of "markets"; there being no requirement that such acts of the council must be by ordinance.

Brief elaboration upon and in the same sequence as these three conclusions may thus be added:

■■ By universal recognition in the domain of equity jurisprudence, the control through injunction by a single litigant, professedly acting only in a representative capacity pro bono publico, of the official acts of those intrusted with the powers of government, is a drastic procedure, and one who essays such a rule must bring his undertaking strictly within the requirements of the position he so assumes; no mere difference of opinion on his part with the public policy or official discretion involved being permissible. Lamm v. Chambers (Tex. Civ. App.) 18 S.W. (2d), 212, and cited authorities. In this instance primary reliance is put upon the recitation in article 9, § 1, of the city charter, reading: "Any citizen who is a tax-payer of the City of Houston may maintain an action in the proper court to restrain the execution of any illegal, unauthorized, or fraudulent, contract or agreement on behalf of said City"—but, no fraud being alleged, nor even hinted at, just sheer lack of power, the good faith of the city council is conclusively presumed. Simons v. Ry. (Tex. Civ. App.) 57 S.W.(2d) 199, at page 202 (5).

■ This reduces the appellant to the necessity of showing that the renting arrangement he assails was illegal and unauthorized, or amounted in effect to an abdication of the city's governmental functions. Bowers v. City of Taylor (Tex. Com. App.) 16 S.W.(2d) 520, 521 (23). In attempting to do that, he argues that it involved a "diversion" of the funds realized from the sale of the bonds that were voted partly for the purpose of constructing "a complete Farmers' Market" and partly for "the purchase of additional land therefor and the building of permanent improvements thereon"; this, when the averments are reduced to the tender of an ultimate issue, being the sole factual basis for the conclusion added thereto, that it constituted a diversion of the funds so realized for the council to even so temporarily rent for restaurant purposes the small stall referred to.

It is neither charged nor pretended that the bonds were voted for the sole purpose of providing a place where farm products exclusively were to be displayed and sold, nor upon any other definition of just what "a complete Farmers' Market" with "appurtenant land and permanent improvements theron" should include; the pleading in that particular merely (and rather naively) saying that "all available space therein is so used for farm-products and is inadequate for that purpose." Obviously this amounts to no more than stating the pleader's opinion, information, or belief; hence fails to measure up to the requirements of R. S. art. 4647, for the issuance of an injunction. Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153, at page 159, and cited authorities.

■ When the people thus came to vote these two sets of bonds for the broad and nonparticularized purpose of "constructing a complete Farmers' Market" and "the purchase of additional land and construction of permanent improvements for Farmers' Market," they knew that their then existing charter vested in the mayor and council these among many other general powers: (1) "To exercise all the municipal powers necessary to the complete and efficient management and control of the municipal property and affairs of said city to effect the efficient administration of the municipal government of said city." Article 2, § 2. (2) "*Markets*—Said city shall have power to establish, lease, maintain, regulate and operate markets and market places,

and abattoirs and to build, own and maintain buildings therefor, and to rent and lease the same." Article 2, § 10.

Even if these express authorizations did not, in effect, directly negative any right in appellant, however solicitous he was for the public welfare, to so harness the discretion of the city's governing body, by plain, if not necessary, inference they indubitably did make of such a transitory and incidental use of this building, after it had been built and put under the council's general control, management, and maintenance, a mere matter of official discretion on its part that, in the absence of a clear abuse, was not subject to interference from him. Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, 843; State v. City of Marianna, 183 Ark. 927, 39 S.W.(2d) 301; Lamm v. Chambers (Tex. Civ. App.) 18 S.W.(2d) 212; City of San Antonio v. Fetzer (Tex. Civ. App.) 241 S. W. 1034; City of Beaumont v. Matthew (Tex. Civ. App.) 224 S. W. 589; 32 C. J. 260, § 410; Los Angeles District v. Chestnut (Tex. Civ. App.) 287 S. W. 693.

Especially would this inference seem an easy and natural one when appellant himself draws its equivalent in his quoted declaration "That there is no necessity for the establishment of a restaurant and cafe in the said Farmers' Market, either for the convenience of the producers or the consumers, including this Plaintiff and other citizens of the City of Houston, using the same as aforesaid, for the reason that such needs are already adequately supplied," thereby in effect setting out that there is already one restaurant in the market, and that it supplies the full need in that respect; thus again emphasizing, it would seem, his complaint as merely one of difference in opinion between himself and the council as to how the municipal property should be managed.

Finally, it appears to be clear, from the terms of the bill itself, that there was here no contravention of section 17, art. 2, of the city charter, in that, instead of charging the right of control, user, or ownership of this space, to have been in any way alienated, lost, or surrendered, it is specifically alleged that the renting thereof was to be from month to month only, and explicitly terminable at any time upon thirty days' notice.

Moreover, section 17 of this article obviously has to do with the "alienation" of the city's rights in its streets, highways, parks, and other public properties, to accomplish which a formal ordinance is required; while the previously quoted section 10 thereof governs such lesser functions as the renting and leasing of its "markets and market-places," which the council may do as an express incident to its general managerial control over the same, elsewhere specifically vested.

An affirmance has been entered.

Affirmed.