### SPEARS et al. v. CITY OF SOUTH HOUSTON et al.

#### No. 11021.

Court of Civil Appeals of Texas. Galveston.
Feb. 8, 1940.

Rehearing Denied Feb. 29, 1940.

198

J. S. Bracewell, of Houston, for appellants.

J. E. McWhorter, of South Houston, and Sewall Myer, of Houston, for appellees.

CODY, Justice.

The trial court sustained a general demurrer to that portion of plaintiffs' pleading which sought a temporary injunction.

The petition shows that the suit is brought by resident taxpayers of the City of South Houston, which is incorporated under general law, against the city officials to enjoin them in the respects hereinafter indicated, and for the recovery of $16,000, alleged to have been misappropriated and misapplied, and for the removal from office of such officials. The city is made a party defendant, as well as two banks, which are alleged to be the city's depositories, and also one of the city's bondholders.

The petition alleges that the officials are under bond, and the amounts of the bonds; and that the city has an outstanding bonded indebtedness in the sum of $258,000, consisting of three issues, as follows:

Refunding bonds, series 1934,
  in the sum of.............. $123,000.00
Sewer bonds, issue of December
  ber 12, 1938, .............. 110,000.00
Waterworks, issue of December
  13, 1938, ................. 25,000.00

And that the city had cash on hand in the general fund at the beginning of the fiscal year, July 1, 1938, in the sum of $448.-22. That on September 14, 1938, the city council by ordinance adopted a certain tax levy, levying a tax of $1.50 on each $100 valuation of all of the taxable property within the city, apportioned as follows:

Sewer Bonds, ....................... .55
Waterworks Extension Bonds, ........ .15
City Hall Bonds, ................... .17
Refunding Bonds of 1934, ........... .42
General operating fund, ............ .21

The petition alleged that prior to the passage of said taxing ordinance the city had authorized the issuance of City Hall Bonds, but same were never issued and on November 21, 1938, the City Council purported to, but did not in fact, rescind said issue; that by said taxing ordinance defendants were obligated to observe the apportionment therein set forth, and to place the amounts so appointed in the respective sinking funds for each of said issues, out of the taxes for the year 1938. The petition alleges with particularity that this was not done, but that the amount of taxes collected for the year 1938 which should have been apportioned to sinking funds, but which were in fact disbursed as the general operating fund of the city, was in excess of $16,000, and that thereby all of said officials had misapplied and misappropriated the taxes levied for the interest and sinking fund accounts provided by the ordinance on the bond issues above set forth. The petition alleges that the defendants expended unlawfully the 1938 taxes which had been levied for bond purposes, as follows: Commission for sale of bonds, $6,028.75; attorney's fees, $3,500; to the mayor for services over his fixed compensation, $1,897.50; to Tom Hodge for services claimed to be in connection with the issuance of bonds, $2,700; and other smaller items for stenographic hire, for printing and miscellaneous expenditures. That all of said expenditures were far in excess of anticipated revenues for the general operating fund, and even if the expenditures were otherwise proper, they could not lawfully be taken out of taxes levied for the interest and sinking fund accounts, and same constituted a deliberate diversion and misapplication of funds, which plaintiffs are entitled to recover for the use and benefit of the city. The petition further alleged that there was expended through said general revenue account for the fiscal year ending June 30, 1939, the sum of $34,113.56, same being an overdraft of all revenues received (after transferring $1,700 to the refunding bond account) in the sum of $1,575.03.

The petition then alleges that the obligations payable out of the general revenues of the current fiscal year far exceed such anticipated revenues, alleging that such general revenues will aggregate not exceeding $14,500, which will be required for the economical operation of the necessary functions of government; and that in addition, the city owes a bank a note for $5,000, and other accounts of approximately $5,000 payable out of the general fund; that unless restrained the defendants will expend funds and incur additional obligations far in ex-

cess of anticipated revenues for the current fiscal year.

The petition then alleges that plaintiffs have notified defendants not to place any of the taxes levied for interest and sinking funds to the account of the general revenue fund or expend same other than lawfully, and such notice and demand was made in writing but defendants have refused to desist from such acts or to answer said written demand or give any assurances that they will not continue to misappropriate and misapply funds levied for interest and sinking fund purposes, and these plaintiffs believe that said course of conduct will continue in the future unless restrained. A tax of $1.50 on the $100 valuation for the year 1939 has been duly levied, 43 cents being for general fund and $1.07 for interest and sinking fund purposes, and that all of the taxes so levied for interest and sinking fund will be deposited in the general fund, as heretofore, and misapplied, and that a far greater sum has been misapplied than is covered by the surety bonds of the officials.

The petition further alleges that plaintiffs furnished defendants with a copy of their original petition and therein sought no relief against the City of South Houston, but sought relief only against the officials, and the city was made a party only because recovery was sought in its behalf, but pursuant to their purpose to squander the revenues of the city that appellees employed the Honorable Sewall Myer, an eminent attorney of the Houston Bar, to represent the city, though it has a regular attorney competent in all respects, and the employment was made in bad faith, that is, the employment was made in fact for their own defense and to resist the claims made on behalf of the city, and the defendants are jointly and severally liable to repay the fee paid to employ said attorney; and that unless restrained, defendants will pay large additional sums belonging to the city under the guise of defending this suit, but in fact to defend themselves against the claims against themselves.

The prayer, as relates to the temporary injunction, is for enjoining defendants from apportioning said taxes other than as set forth in said ordinances, or placing any taxes collected for interest and sinking fund purposes to the general fund of the city, or expending same as such, or from directly or indirectly making any expenditures from or creating any obligations against the general fund beyond the reason-

ably anticipated revenues for such purposes for the current year, or paying any other costs and expenses of this case except as directed by the court.

██ Taxes which are levied, assessed and collected for sinking fund and interest may not lawfully be diverted to the general fund of a municipality and expended for general purposes. Art. XI, Section 6, of State Constitution. Vernon's Ann.St.; Art. 1040, R.S.1925; City of Sherman v. Williams, 84 Tex. 421, 19 S.W. 606, 31 Am.St. Rep. 66. See also City of Austin v. Cahill, Tex.Civ.App., 88 S.W. 536, 537, and Article 839, R.S.1925 and Art. 2565, Vernon's Ann. Civ.St. art. 2565. Any asserted power of transfer of tax money from one fund to another "and the consequent expenditure thereof for a purpose essentially different from that for which, ostensibly, it was taken from the taxpayer, effectually is inhibited and nullified, in law, by reason * * * that our Constitution itself—to say nothing of our statutes—specifically has designated and permitted the creation of each such separate fund, and for each expressly and specifically has prescribed a separate maximum tax rate. Utterly and radically at variance with those provisions is the whole conception of a transfer of money from one to another such fund, and its consequent application accordingly." Carroll v. Williams, 109 Tex. 155, 202 S.W. 504, 507. It is clear, therefore, that the City Council was without power to authorize the transfer of tax money, collected on a levy made to service an outstanding bond issue, to the general operating fund. And a taxpaying citizen has such an interest in having tax money devoted to the purposes for which it was assessed and collected that, in a proper case, he can qualify for an injunction against its unlawful diversion. Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367. Since the court sustained a demurrer to so much of plaintiffs' petition as sought a temporary injunction against defendant (appellee) officials, the sole question is the sufficiency of the allegations of said petition to entitle appellants, as taxpaying citizens of the city, to the temporary injunction prayed for.

██ Naturally injunctions will not issue to command defendants not to do what it is made to appear to the court that they have already done. Therefore, if the allegations of the petition are subject to the construction that appellants are seeking to have appellees enjoined from diverting tax money

which has already been diverted to the operating fund, and expended, for general purposes (that is, the allegations relating to the tax year or fiscal year ending June 30, 1939), then the court properly sustained a demurrer thereto.

In so far as appellants seek to have appellees temporarily enjoined "from directly or indirectly making any expenditures from or creating any obligations against the general fund beyond the reasonably anticipated revenues for such purposes for the current year", the court was correct in sustaining a general demurrer. What will constitute the creation of "obligations against the general fund beyond the reasonably anticipated revenues for such purposes" is obviously a matter of judgment, and if a writ of injunction were directed against the city official appellees in the quoted language, it would be defective for failure to lay down a definite test by which to know what they could or could not do. A writ of injunction should be certain and clear in its terms that the defendant may readily know what he is restrained from doing and what he must obey at his peril. Royalty v. Strange, Tex.Civ.App., 204 S.W. 870. Appellants, in such respect, are seeking to control the city officials in the exercise of powers of government which has been entrusted to them by law. And this court, speaking through Justice Graves said, in Mayer v. Kostes, Tex.Civ.App., 71 S.W.2d 398, 401, "By universal recognition in the domain of equity jurisprudence, the control through injunction by a single litigant, professedly acting only in a representative capacity pro bono publico, of the official acts of those intrusted with the powers of government, is a drastic procedure, and one who essays such a rule must bring his undertaking strictly within the requirements of the position he so assumes; no mere difference of opinion on his part with the public policy or official discretion involved being permissible." If the court were to command the city officials not to make "any expenditures from or create any obligations against the general fund beyond the reasonably anticipated revenues for such purposes", it would only be commanding them to do what the law has already commanded them to do, and entrusted to their judgment. But a writ of injunction in such language would not be certain and clear in its terms so that the defendants could readily know what they are restrained from doing and what they must obey at their peril.

The court's refusal to enjoin the city officials from paying any expense or costs of this case except as the court might order was also correct. Conceding the truth of all the allegations of fact in appellants' petition as required in testing the sufficiency of a pleading, we believe that the action of the city officials in defending this suit is a matter addressed to their official discretion. This suit is brought against the officials for their official acts, and the city is made a party defendant. Appellants are in effect asking that the court suspend the city officials from exercising their official and governmental functions, or control same, inclusive of defending this suit, during the pendency of such suit. The mere fact that appellants ask no relief against the city does not deprive appellees of their official connection with the city. It is in respect to this official connection that appellants are seeking to control appellees, that is, to control their official actions, actions for which they are answerable to the city. It clearly appears that, in addition to a suit for damages against the city officials and for their removal, that the suit is one to control such officials in the administration of the city's affairs during the pendency of such suit. It is obviously a conclusion of the pleader that in resisting the suit appellees are acting only in their own interests, and not in the interest of the city. To us it seems clear that the city is a necessary party. But appellants have themselves made the city a party, and as it is clearly the responsibility of the city officials to determine whether, when the city is a party defendant to a suit, it will or will not defend against it. The court correctly refused to substitute its judgment for the discretion of the officials by sustaining a demurrer to the petition in so far as it sought to enjoin "paying any other costs and expenses of this case except as directed by the court, pending a hearing hereof."

Does the petition state a case which, if true, would entitle appellants to an injunction restraining appellees "from apportioning said taxes other than as set forth in said ordinances or placing any taxes collected for interest and sinking fund purposes to the general fund of said City of South Houston, or expending the same as such. * * *"?

The Legislature has provided a legal remedy for enforcing compliance with the legal duty of apportioning taxes to the purposes for which they have been levied. Art. 1015, section 42, provides, with reference to spe-

cial funds: "To provide by ordinance special funds for special purposes, and to make the same disbursable only for the purpose for which the fund was created. Any officer of the city misappropriating said special fund shall be deemed guilty of malfeasance in office, and shall, on complaint of any one interested in said funds misappropriated, be removed from office, and be incapable thereafter to hold any office in said city." In so far as the present suit is brought for the conviction of malfeasance and removal of appellees from office, it appears to be brought under this article. Appellants have alleged, we believe, no reason for delay in resorting to this remedy of removal for the misapplications alleged to have occurred a year and a half ago. The misapplications, complained of specifically, occurred in 1938. The removal of an officer from office for malfeasance is a simple remedy, and works no injustice. But to undertake to control an officer in the exercise of his official duties by temporary injunction is a matter of the greatest delicacy, and might work the gravest injustice. In the present case, for instance, appellants in effect concede that they have failed to specify what acts of misapplication are threatened, and which will be done by appellees with reference to the 1939–40 tax money, unless restrained pending the trial. They affirm that in the nature of things they are unable to specify such acts any more specifically; and they contend that this apparent defect in the allegations is cured by the specific references to the misapplications made of the tax money in 1938, such as commission on the sale of bonds in the sum of $6,028.75, and attorney's fees in the sum of $3,500, etc., on the one hand, coupled with the allegations that appellants notified appellees in writing to desist and refrain from placing the taxes levied for interest and sinking fund purposes to the account of the general fund or expending same other than as authorized by law, and that appellees have failed and refused to desist from such acts or to give assurance that they will not continue to misappropriate and misapply funds, etc., on the other. In support of this contention appellants cite the case of Commissioners' Court of Henderson County v. Burke, Tex.Civ.App., 262 S.W. 94. It does not appear that the case referred to was one to remove defendants from office for malfeasance; and it is made to affirmatively appear at the time an attempt was made to have the cause advanced on the docket of the Court of Civil Appeals, that the appeal was from the action of the trial court granting a permanent injunction after a trial had on the merits. Id., 255 S.W. 793. That alone is sufficient to distinguish that from this case. In the instant case appellants have charged appellees with malfeasance in office, an offense which, if appellees are proved guilty, will result in a removal from office and a partial loss of rights of citizenship. Appellees cannot be required to say they will cease misappropriating funds as charged on penalty of being enjoined by the trial court during the pendency of the suit, for, as put, that would be an admission that they had misappropriated funds. To be required to say they will cease being guilty of malfeasance is to be required to accuse themselves. The failure of appellees to say they will cease doing acts they are accused of as the basis for removal from office, can scarcely form the basis for the court to grant a temporary injunction against appellees doing, during the pendency of the suit, acts of the same character as that for which the suit is brought to remove appellees from office. Such an action by the trial court is tantamount to a finding by the trial court that, unless restrained by a temporary injunction, appellees will, during the pendency of the trial, be guilty of acts for which they ought to be removed from office. And such an action on the part of the court would tend to lead the jury, when the merits were tried, to conclude that appellees were guilty as charged. In such a case as this, where a suit seeking a temporary injunction against defendants is combined with a suit to remove such defendants from office, there can be no relaxation in the rule, "In a suit for injunction, the allegations of fact should be direct, certain, and particular and, if they are in this respect insufficient, we think the defect is not corrected by the addition of conclusions of either fact or law." Pearson v. Black, Tex.Civ.App., 106 S.W.2d 787, 789. See Gillis v. Rosenheimer, 64 Tex. 243, 246. We are not at all sure that a temporary injunction would lie at all where the granting of it would indicate to the jury, before the trial on the merits, that the judge believes that defendants would be guilty of acts, unless restrained, for which their removal from office is sought. But where the basis of the inference which the pleader desires to have drawn is that defendants will do, during the trial, the acts they are accused of, because they will have a chance to if not restrained, etc., the rule of pleading as ap-

plied to injunctions applies in full force. And the court did not err in sustaining the demurrer in the connection just discussed.

Believing the action of the trial court was not erroneous, the judgment below, appealed from, is affirmed.

Affirmed.