### VILIAS v. FEATHERSON.

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

1. COMMISSIONER OF DOCKS—LEASE OF MARGINAL STREET.

The commissioner of docks has no authority to lease a portion of a marginal street for a stand for the sale of flowers and tobacco; New York City Charter (Laws 1901, p. 346, c. 466) § 817, providing that such marginal streets shall be marginal wharves, and the authority given therein and in section 825, p. 355, as amended by Laws 1902, p. 1777, c. 609, to lease the same, being impliedly limited to dock purposes.

Appeal from Special Term, New York County.

Action by Cosmas Vilias against Maurice Featherson, commissioner of docks of the city of New York. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Julius M. Mayer, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J. The complaint alleges that on or about the 31st day of December, 1903, McDougall Hawkes, as commissioner of docks of the city of New York, by and with the consent of the commissioners of the sinking fund of the city of New York, made and executed an agreement in writing with the plaintiff whereby the said McDougall Hawkes, as such commissioner of docks of the city of New York, did lease, demise, and to farm let unto the said plaintiff for the term of five years, commencing on the 1st day of January, 1904, a certain piece of property, about 12 feet square, upon what was known as the marginal street at the foot of East Twenty-Third street, in said city; that said agreement provided that the plaintiff should have the right to erect and maintain upon the portion of the marginal street thus leased a stand for the sale of flowers, newspapers, and tobacco; that the plaintiff should pay as rent of said stand and premises so leased to him as aforesaid by the said commissioner of docks of the city of New York, in four equal quarterly payments in advance, during the said term, as rent, the sum of $250; that on or about the 4th day of January, 1904, the plaintiff paid to the defendant, who had succeeded Hawkes as dock commissioner, the sum of $62.50, being for the first quarter's rent, pursuant to said agreement, for which the plaintiff received a receipt signed by the cashier of the dock department; that subsequent thereto, and on or about the 22d day of January, 1904, the plaintiff received from the defendant a notification, which is annexed to the complaint, signed by the secretary of the department, which informed the plaintiff that the department was in receipt of an opinion from the corporation counsel to the effect that the use of the marginal street for the purposes contemplated in the lease was an illegal use, and that the commissioner of docks had no power to execute the lease in question, and that the lease was therefore canceled, and the department would not permit the maintenance of a stand on the marginal street thereat under such lease, and that if the plaintiff would call at the office of the dock department the money deposited as the plaintiff's rental of the premises, amounting to $62.50, would be returned to him. The complaint further alleges that after the making of the lease, and before the 22d day of January, 1904, the plaintiff, relying upon the said lease or agreement, expended the sum of $612.59 in the construction of a suitable shed or structure in which to conduct the business referred to in the lease. Wherefore the plaintiff asks for a judgment directing the defendant to specifically perform the said lease or agreement entered into between his predecessor in office as commissioner of docks, and that the plaintiff recover the sum of $612.59, damages sustained by him.

There was annexed to the complaint a plan from which it appeared that the property leased was upon the marginal street adjoining a ferry to Brooklyn and an extension of Twenty-Third street. No objection

is taken by the defendant to the form of the action, or as to the right of the plaintiff to judgment if the commissioner of docks had power to authorize a structure to be built upon this marginal street. The importance of this question does not depend upon the value or the right of the plaintiff to this small portion of the marginal street, but there is involved the right of the dock commissioner to authorize these marginal streets to be incumbered by structures or buildings to be used for private business. If the Legislature has granted to the dock commissioner power to lease the marginal streets on the water front, there is nothing to prevent him from leasing the street, and authorizing the erection of buildings thereon to any extent, depending solely upon his discretion. If the Legislature has vested him with this power, the courts cannot review his discretion in relation to the size of the buildings, or the extent to which the streets are incumbered. That such was the intent of the Legislature would not be inferred unless such intent was plainly expressed. The plaintiff insists that authority to make this lease is found in certain sections of the charter, (chapter 466 of the Laws of 1901, as amended by chapter 609, p. 1777, of the Laws of 1902).

By section 817, p. 346, of the charter, all of the powers and duties theretofore vested in the department of docks of the mayor, aldermen, and commonalty of the city of New York are devolved upon and vested in the department of docks and ferries created by the charter; and section 818 provides that the commissioner of docks shall have exclusive control, subject in the particulars thereinafter mentioned to the commissioners of the sinking fund, of the wharf property belonging to the corporation of the city of New York, including all wharfs, piers, bulkheads, and structures thereon, and waters adjacent thereto, and all the slips, basins, docks, water fronts, land under water, and structures thereon, and the appurtenances, easements, uses, revisions, and rights belonging thereto, which are owned or possessed by the corporation, or to which said corporation is or may become entitled; and said commissioner should have exclusive charge and control of the repairing, building, rebuilding, maintaining, altering, strengthening, leasing, and protecting said property, and every part thereof. It is also given the exclusive government and regulation of all wharf property, wharfs, piers, bulkheads, and structures thereon, and waters adjacent thereto. Section 819 provides that the plan or plans for the whole or any part of the water front of the city of New York, as theretofore adopted and certified to by the commissioners of the sinking fund, and filed in the office of said department of docks, and such plan or plans as may be determined upon pursuant to section 817 of the charter, adopted and certified to by the commissioners of the sinking fund, and filed in the office of the commissioner of docks, shall be and continue to be the sole plan or plans according to which any wharf, pier, bulkhead, basin, dock, slip, or any wharf structure or superstructure, shall be laid out or constructed, and that:

"Whenever the plan so determined upon and adopted, or hereafter to be determined upon and adopted, shall include the widening of an exterior street or avenue, or the opening and construction of a new exterior street or exterior avenue, or the abandonment or closing of such street or avenue already in existence, the power to widen, open, construct, abandon or close the same shall

exclusively reside with the said commissioner of docks, who is hereby authorized to take such steps as may be necessary in that regard, and after the same shall have been so widened or opened, the right to maintain the widened portion of a street or avenue already opened, and such new street or avenue shall also reside with the said commissioner of docks; but the street or avenue so widened to the extent of the part so widened, or such new street or avenue opened under this plan shall not be a public street, but shall be a marginal wharf, and shall be used in that regard in such manner from time to time as the commissioner of docks shall, by resolution, determine. The commissioner of docks shall have exclusive power to regulate the use of marginal streets so that the land and buildings upon all such marginal streets may be used to the best advantage in connection with the wharfs and bulkheads; and the commissioner of docks shall have the power to regulate, by license or by any other suitable means, the transfer of goods and merchandise upon, over or under all such marginal streets."

Section 825, p. 355, as amended by chapter 609, p. 1777, of the Laws of 1902, provides that:

"When any of the wharves, piers, bulkheads, slips, docks and basins constructed under the provisions of this chapter shall be opened to the public use, the commissioner of docks shall, subject to the provisions of law, regulate the charges for wharfage," etc. That "said commissioner of docks may, in the name and for the benefit of the corporation of the city of New York lease any or all of such property, and any and all wharf property belonging to the city of New York, as constituted by this act, for a term not exceeding ten years, and covenant for renewal or renewals. * * * But unless said leases are sold at public auction and duly advertised in the City Record and the corporation newspapers for at least ten days, said commissioner shall make no lease authorized by this section unless the terms of said lease are approved by the commissioners of the sinking fund; but temporary permits for a period not exceeding one year may be granted to use and occupy said wharf property, said permits to be terminable at the will of the commissioner."

The complaint alleged that this property which was attempted to be leased to the plaintiff was a part of the marginal street, which had been duly adopted according to law, and as such was water-front property, under the jurisdiction of the said commissioner of docks.

These marginal streets were evidently intended to be a continuation or extension of the dock system; and it was recognized that they necessarily would at times be obstructed by merchandise removed from ships or to be loaded upon ships at the wharves, and by the necessary machinery used for loading and unloading ships, and the other general uses to which wharf property is usually put. If these wharf streets were to be used in this connection, with the adjoining wharves or bulkheads, it would be quite impossible to keep them free from the obstructions and incumbrances which would not be allowed in the usual public streets. It certainly, however, was not intended by this provision to authorize the dock commissioner to cause the marginal street to be built on by permanent structures to be used for business purposes distinct from the wharves or bulkheads, as it seems to me that such authority would be opposed to the whole intent of the Legislature as shown by the various provisions of the charter. While a new street or avenue along the water front was not to be a public street, it was to be a marginal wharf, to be used, not generally as the commissioner should direct, but as a marginal wharf for wharf or bulkhead purposes; and the further provision of the section, that the commissioner of docks should have the exclusive power to regulate the use of marginal streets,

so that the land and buildings upon all such marginal streets should be used to the best advantage in connection with the wharves and bulkheads, did not refer to the land and buildings in the marginal streets, but to the abutting land and buildings, thus emphasizing the intention that these streets should be so used, in connection with the wharves, and the abutting land and buildings thereon, as would best conserve the general purposes of commerce. For that purpose, undoubtedly, the commissioner could authorize the construction of machinery for loading and unloading ships, and carrying the merchandise therefrom to the adjoining property, although such a use would be inconsistent with a strict street use. But there is nothing in this section which would justify the commissioner in appropriating these marginal streets for purposes other than commercial purposes in connection with the wharves and bulkheads or piers which were adjacent to them; and so we see that section 825 of the charter provides that when the wharves, piers, bulkheads, slips, docks, and basins shall be opened to the public, the commissioner of docks may regulate the charges for wharfage, cranage, and dockage of all vessels admitted thereto, and may lease any or all of such property, or any and all wharf property belonging to the city. This provision to lease was not intended to authorize a lease of the marginal streets for purposes not connected with the dock property. But as provided in section 819 of the charter, such marginal streets were to be used as a marginal wharf, and not for other business entirely disconnected with the wharves or piers. The charter is speaking of the power conferred upon the department of docks, and the authority given to the head of that department in relation to the management of the docking facilities of a commercial seaport, in connection with the duties which devolve upon him in charge of such department, and in charge of the wharves, piers, and bulkheads connected with the commercial interest of the city. He is given authority to lease the wharves and piers, and incidental authority in connection with such leases to control the marginal streets which are adjacent to such piers and bulkheads. In conferring that power, there was no authority to lease any of the docks or marginal streets for purposes not connected with the uses of wharves, piers, and bulkheads. I apprehend that if the commissioner should lease for 10 years the whole of one of these streets for a large office building, or for private business purposes, such a lease would be clearly beyond his power; and yet, if he is authorized to lease a portion of one of these marginal streets for the selling of flowers and tobacco, I can see no reason why he would not also be authorized to lease the whole of such a street for the erection of a permanent building. These marginal streets became a part of the wharf system of the city, to be used in connection with wharfs and piers for the commercial uses to which such wharves and piers are devoted; and for such commercial purposes the wharfs and piers can undoubtedly be leased, and the use of the marginal street, in connection with the wharf and pier thus leased, authorized by the commissioner. But the power of the commissioner, it seems to me, is restricted to such a use of the marginal street, and he has no authority to divert these marginal streets from use in connection with the wharves and piers which the statute plainly implies.

I think, therefore, this lease was in violation of these provisions of the charter, and in excess of the power of the commissioner, and that the court below was right in refusing to enforce such an agreement or lease made in violation of the provisions of the charter.

It follows that the judgment appealed from must be affirmed, with costs. All concur.