In the Matter of the Application of CHARLES L. CRAIG, as Comptroller of the City of New York, Respondent, *v.* JAMES MATTHEWS, Appellant.

In the Matter of the Application of CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant, *v.* PETER J. BRADY, as Supervisor of the City Record. (Proceedings Nos. 1 and 2.)

New York city — power of Board of Commissioners of Sinking Fund to appoint secretary — custody of records, papers and documents — right of Comptroller to possession of certain records, instruments and documents — mere duty of certifying documents coming to Board does not entitle Comptroller to possession — abstract of proceedings of Board to be compiled by Comptroller for publication in City Record — Comptroller without authority to make and compel publication of calendar of proceedings of Board.

1. The Board of Commissioners of the Sinking Fund of the city of New York, without the concurrence or presence of the Comptroller, has the power to appoint a secretary. Such appointment is neither controlled by the provision of the ordinance providing that a quorum of the Board shall consist of four members of whom the Comptroller shall be one nor prohibited by the provisions of the ordinance that the Comptroller shall keep a journal of the proceedings of the Board.

2. As between the Board of Commissioners of the Sinking Fund and the Comptroller, the Board would presumably be entitled to the custody of such records, papers and documents as come into its possession. If a different rule governs it is the result of some controlling law or regulation. There are such provisions which either directly or by implication change the ordinary rule in the case of the Board of Commissioners of the Sinking Fund. General rules relative thereto, based upon ordinances or the charter, for allocating the possession of letters, documents or records, are set forth in the opinion. The mere duty, however, which may be imposed upon the Comptroller of certifying documents and instruments coming to the Board does not entitle him to the possession of such papers.

3. By an ordinance of the city of New York adopted in 1915 the duty is imposed upon the Comptroller of keeping a correct journal of the proceedings of the Board of Commissioners of the Sinking Fund

to be authenticated by the secretary of the Board by his signature. It is fairly to be implied that this journal when authenticated by the ·signature of the secretary shall be taken as the official record of the proceedings of the Board and that ,the abstract required by section 1546 of the Charter to be prepared weekly and published in the *City Record*, is to be compiled from such journal by the Comptroller who has possession thereof.

4. There is no provision which authorizes the Comptroller to make and compel publication of a calendar of the proceedings to be had before the Board of Commissioners of the Sinking Fund.

*Matter of Craig* v. *Matthews*, 207 App. Div. 848, modified.

*Matter of Craig* v. *Brady*, 207 App. Div. 848, modified.

*Matter of Craig* v. *Brady*, 207 App. Div. 838, affirmed.

(Argued February 19, 1924; decided April 8, 1924.)

APPEAL, in the first above-entitled proceeding, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 23, 1923, which unanimously affirmed an order of Special Term requiring the defendant to deliver to the petitoner all records, papers, etc., belonging to or pertaining to the business of the board of commissioners of the sinking fund of the city of New York.

Appeal, in the second above entitled proceeding, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 23, 1923, which modified and affirmed as modified an order of Special Term granting a motion for a peremptory order of mandamus to compel defendant to publish in the *City Record* an abstract of the proceedings of the board of commissioners of the sinking fund as prepared by the Comptroller of the city of New York.

Appeal, in the third above-entitled proceeding, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 11, 1923, which reversed an order of Special Term granting a motion for a peremptory order of mandamus to compel defendant to publish calendars of meetings of the board

of commissioners of the sinking fund as prepared by the relator and denied said motion.

*George P. Nicholson, Corporation Counsel (John F. O'Brien, John Lehman* and *Russell Lord Tarbox* of counsel), for appellant. The board, in the person of its secretary or such other agent as it may designate, is the custodian of all its own records except such as are, by statute or ordinance, specifically intrusted to the Comptroller. There is no allegation to the effect that any of the records now in the possession of the secretary are among those which any statute or ordinance specifically intrusts to the custody of the Comptroller. The proposition that each board, in the absence of a statute or ordinance to the contrary, is the custodian of its own records seems to be elementary. (*Hawkins* v. *Mapes-Reeves Const. Co.,* 178 N. Y. 236; *People ex rel. Sinkler* v. *Terry,* 108 N. Y. 1; *Matter of Sherrill,* 188 N. Y. 185; *Matter of Trounstine,* 212 N. Y. 421; *Matter of Eagen,* 205 N. Y. 147; *City of New York* v. *Vanderveer,* 91 App. Div. 303; *Matter of Francis,* 73 Misc. Rep. 148.) The supervisor is forbidden, unless ordered by the mayor, to publish anything except " a brief abstract " of the transactions and unless they are transmitted to him. It is the duty of the board of commissioners of the sinking fund to cause the preparation of this " brief abstract " either by its secretary or such other agent as it may designate. (*Hawkins* v. *Mapes-Reeves Const. Co.,* 178 N. Y. 236.)

*Charles L. Craig* for respondent. The purported appointment of the appellant Matthews as secretary of the board of commissioners of the sinking fund was not made in conformity with or under the authority of any provision of existing statute or ordinance and is a nullity. (*Hawkins* v. *Mapes-Reeves Const. Co.,* 178 N. Y. 236; *Powers* v. *Tuttle,* 3 N. Y. 396.) The action of the appellant Matthews in possessing himself of the records of the

1924.]          Opinion, per HISCOCK, Ch. J.          [238 N. Y. 88]

sinking fund commission, and that of certain members of the sinking fund commission purporting to appoint him secretary thereof are in defiance of law; and prevent the due performance by the Comptroller of duties of great public importance. (*County of Santa Clara* v. *Southern Pac. R. Co.*, 18 Fed. Rep. 385; *Ames* v. *Union Pac. Ry. Co.*, 64 Fed. Rep. 165.)

HISCOCK, Ch. J.   These appeals comprehend part of a rather bitter controversy which has arisen between different members of the Board of Commissioners of the Sinking Fund of the City of New York in respect of their various duties and powers.   They will be considered in the order above stated, since the first appeal involving the right to possession of records, documents, conveyances, and so forth, as between the Comptroller and the other members of the Board is much the more important.

Sinking Funds and a Board of Commissioners of the Sinking Fund early became a part not only of the government of the former City of New York but also of one or more other cities which later became consolidated with it into the present City of New York and new sinking funds were created by the present charter.   It will not be necessary for the purpose of discussing the questions before us to make any general review of all of the statutes and ordinances pertaining to this subject, but such review may be limited to comparatively few.

In 1844 the authorities of the City of New York adopted an ordinance pertaining to this subject which has been to such an extent continued and perpetuated in the charter and ordinances governing the present city that it is not inappropriate to summarize its provisions quite extensively.

It consisted of five titles.   The first title appropriated certain revenues to a fund called " Sinking Fund of the City of New York for the redemption of the City debt."

The second one appropriated certain revenues to a fund to be called " The Sinking Fund of the City of New York " for the payment of interest. The third title designated the officers of the city who should constitute a board to be known as " The Commissioners of the Sinking Fund of the City of New York " and of whom the Comptroller was one. It designated various powers to be possessed and various duties to be discharged by said Board and then contained certain provisions which are especially discussed in this controversy. It provided "Any four or more of the persons named in the first section of this title [the persons already referred to as constituting the Commissioners of the Sinking Fund] of whom the Comptroller shall be one, shall be and are hereby authorized to discharge the trusts and duties vested in them by this ordinance;" also that it should " be the duty of the Comptroller to keep a correct journal of the proceedings of the said Commissioners to be verified by any four of them, himself being one, and once in each year or oftener if required to render unto the Common Council the full and detailed report of the proceedings of the said Commissioners," the ordinance then specifying in considerable detail what should be contained in said report. Title 4 amongst other things provided that the Comptroller should take charge of the real estate belonging to the corporation, should " keep all title deeds, leases, bonds and mortgages and other assurances of title and all certificates of stock belonging to the Sinking Fund," should " superintend the collection of all rents, interest and the moneys due the said Sinking Fund and  *  *  *  direct all necessary measures to compel the payment of them and report the condition of the same to the Common Council quarterly." Title 5 treated of the valuation at which real estate belonging to the Sinking Fund might be sold.

The Greater New York charter provided for the continuance and erection of certain sinking funds, for a

Board of Commissioners of the Sinking Fund composed of the same officials as stated in the ordinance of 1844 of whom the Comptroller should be one, for the discharge by said board of various duties, some of which were new and scarcely connected with the administration of any sinking fund, and provided that " The funds to be known as ' The Sinking Fund of the City of New York ' and ' The Water Sinking Fund of the City of New York ' as hereinafter constituted shall be administered by the Commissioners of the Sinking Fund in like manner as provided by the ordinance of  *  *  *  1844 [hereinbefore referred to] so far as the same may be applicable."

In 1915 there was passed a new ordinance dealing with the city debt and sinking funds and quite largely following the provisions of the ordinance of 1844. Article 1 of this ordinance specified the sources of income from which the Sinking Funds respectively for the redemption of the city debt and for the payment of interest should be created, imposed certain duties upon the board as a whole and certain duties upon the Comptroller alone and amongst which were the ones that he should " superintend the collection of all rents, interest and demands due to the sinking funds and direct all necessary measures to compel the payment of them, and report the condition of the same to the Board of Aldermen quarterly; " that he should " keep a correct journal of the proceedings of the Board of Commissioners of the Sinking Fund to be authenticated by the secretary of the board by his signature and once in each year or oftener if required  *  *  *  shall render unto the Board of Aldermen a full and detailed report of the proceedings of the board." The article also contained the provisions that any four or more of the members of the Board of Commissioners of the Sinking Fund as constituted by the charter, " of whom the Comptroller shall be one, shall be and are hereby authorized to discharge the trusts and duties vested in them by *this article*."

Article 3 provided that the Comptroller should " superintend all real estate of the city and report to the Board of Aldermen all encroachments thereon. He shall direct and superintend the collection of all rents or other moneys due to the city." He was also directed to " keep on file in his office all title deeds, leases, bonds, mortgages or other assurances of title except such as are directed by law and ordinance to be deposited elsewhere." By article 6 it was provided that the Comptroller should " keep on file in his office all evidences of debt, contracts, bonds of indemnity, official bonds and all certificates of stock belonging to the sinking fund except such as are directed by law or ordinance to be deposited elsewhere," and he was enjoined to " direct legal proceedings to be taken when necessary to enforce payment of rents or other debts due to the corporation or to obtain possession of premises to which the corporation is entitled."

In the light of these charter provisions and ordinances we come to the consideration of the questions which have been discussed on this appeal. These are two in number. The first is the one whether the Board of Commissioners of the Sinking Fund without the concurrence or presence of the Comptroller has the power to appoint a secretary. While this question may not be directly involved in the appeal we have thought it wise to consider it with the possibility of removing the occasion for disputes and smoothing out the rather tempestuous path which this Board seems to have been traveling.

We have no doubt that in the absence of express prohibition such a Board has the power to designate one of its own members or an outsider for the purpose of discharging ordinary secretarial duties such as keeping minutes of its proceedings, conducting correspondence and preserving the custody of records and papers which may be lodged with the Board. There not only is no provision prohibiting the Board from appointing such a secretary but in addition to the general charter provisions author-

izing boards to appoint secretaries there is in one of the provisions of the ordinance which we have quoted, direct recognition of the existence of a secretary of this Board. In said ordinance it is provided in so many words that the journal to be kept by the Comptroller shall be authenticated by the secretary of the Board.

The appointment of such a secretary is neither controlled by the provision of the ordinance providing that a quorum of the Board shall consist of four members of whom the Comptroller shall be one nor prohibited by the provisions of the ordinance that the Comptroller shall keep a journal of the proceedings of the Board. So far as concerns the first provision even if we should assume that this provision for a quorum requires the concurrence of all the specified members, a question which we do not at all pass upon, such interpretation would not apply to such a matter as the appointment of a secretary. That provision for a quorum by its terms is limited to the performance of the duties specified in the article of which it is a part and a mere detail of the methods by which the Board should discharge its fundamental duties, such as the appointment of a secretary or the selection of a meeting room would not be governed by the provision. Neither, as we have said, does the provision directing the Comptroller to keep a journal prevent the Board from appointing such a secretary as we have indicated. The powers and the duties given to and imposed upon the Comptroller by this section of the ordinance are personal ones and have a specified purpose. Under this provision he has the undoubted right to be present at all meetings of the Board and, independent of his other rights thereto, to have access to all minutes, documents and papers in the possession of the Board for the purpose of making up the journal which is required of him. He also undoubtedly has the right as a matter of convenience to appoint any person whom he desires to attend meetings and perform the clerical duties of taking minutes for him

and in his place and in view of the reports which he is required to compile from this journal we think that he has the right to its exclusive possession. But as we have said the keeping of this journal is a duty personally imposed upon the Comptroller and to the end of enabling him to discharge certain other duties and it does not, in our judgment, in any manner interfere with or prevent the Board from appointing a secretary who would discharge the ordinary duties of such an office.

The next question is the one involving the right of possession as between the Board of Commissioners of the Sinking Fund and Comptroller, of correspondence, records, papers, instruments and documents. We shall not, of course, attempt the impossible task of allocating in detail as between these contending officials the possession of every letter, document or record but shall state some general rules based upon ordinances or the charter which will enable the different members of the Board to understand and enjoy their respective rights.

Presumably a public board is entitled to the custody of such records, papers and documents as come into its possession. If a different rule governs it is the result of some controlling law or regulation. There are such provisions which change the ordinary rule in the case of the Board of Commissioners of the Sinking Fund.

As we have already said we think that it is a fair implication from the ordinance requiring the Comptroller to keep a journal of the proceedings of the Board of Commissioners of the Sinking Fund for the purpose of enabling him to make a report to the Board of Aldermen, that he should have the custody of such journal. The duty to keep it is a personal one imposed upon the Comptroller and it would be out of harmony with the provision if the Board were entitled to take and retain possession of it. We do not think, however, that this ordinance requires or permits the Comptroller to have possession of every instrument or record which he may consult in

making up such journal. Of course, all of the records and proceedings requisite to the preparation of this journal even though in the possession of the Board would be open and accessible to the Comptroller, not only for the purpose of making up his journal but also as a member of the Board.

There are other powers and duties intrusted to and imposed upon the Comptroller which in our judgment directly and by fair implication require that he should have possession of various maps, instruments, documents and correspondence and which we shall now enumerate.

The provisions of the charter that any citizen shall be entitled to make an inspection at the office of the Comptroller of any water front map or plan which is the subject of a public hearing before the Commissioners implies that such maps shall be retained by the Comptroller at his office. The provisions of the ordinance of 1915 that the Comptroller shall keep and file in his office all title deeds, leases, bonds, mortgages or other assurances of title except such as are directed by law or ordinance to be deposited elsewhere and shall cause all grants, leases and counterparts of leases and all deeds executed by the city to be recorded in proper books and be kept in his office, and also that he shall keep and file in his office all evidences of debt, contracts, bonds of indemnity, official bonds and all certificates of stock belonging to the sinking funds except such as are directed by law or ordinance to be deposited elsewhere so plainly confer upon the Comptroller the right to the custody and possession of these various instruments and documents that no process of interpretation can make them plainer.

There may be other provisions of charter or ordinance not called to our attention which specifically or by necessary implication confer upon the Comptroller the right to possession of some instrument or document.

In addition to the primary instruments which are

7

committed to the custody and possession of the Comptroller we think that it is also fairly to be implied that he should have the possession and custody of any correspondence, instruments, documents or records which relate to those primary instruments and tend to explain them and to interpret and support the rights of the city therein and thereunder.

In addition, as we have seen, the duty is imposed upon the Comptroller as distinguished from the Board of Commissioners of the Sinking Fund to superintend the real estate of the city, some of the proceeds of which go into the various sinking funds, and to report encroachments thereon and also to superintend and enforce the collection of rents, interest and demands due to the sinking fund or to the corporation. We think again that in view of the manner in which this duty is imposed upon the Comptroller it is fairly to be implied that he should have the possession and custody of correspondence, documents and instruments which relate to the various matters thus intrusted to his management and which may be necessary to enable him to understand the status of the various properties and obligations intrusted to his care and to discharge the duties of protection and collection with which he is charged.

We do not think that the mere duty which is imposed upon the Comptroller of certifying copies of documents and instruments coming to the Board of Commissioners of the Sinking Fund entitles him to the possession of such papers. It would lead to rather extravagant and unexpected results if every officer of a board who had the duty of certifying copies of instruments belonging to such board was entitled by reason of such duty to take exclusive possession thereof.

It does not appear very definitely whether the appellant Matthews has in his possession any of the correspondence, records, documents or instruments to the possession of which we think that the Comptroller is entitled, as above

stated, but a proper disposition will be reached by modifying the order appealed from in accordance with this opinion, without costs to either party.

The second appeal involves the questions, *first,* whether a complete statement or only an abstract of the proceedings of the Board of Commissioners of the Sinking Fund should be published in the *City Record,* and, *second,* if the latter, by whom such abstract should be prepared.

Section 1546 of the charter provides that " In every department, office of a borough president or board there shall be kept a record of all its transactions, which shall be accessible to the public, and once a week a brief abstract, omitting formal language shall be made of all transactions, and of all contracts awarded and entered into for work and material of every description, * * *. A copy of such abstract shall be promptly transmitted to the person designated to prepare the *City Record,* and shall be published therein."

As we have seen, the duty is imposed upon the Comptroller of keeping a correct journal of the proceedings of the Board of Commissioners of the Sinking Fund to be authenticated by the secretary of the Board by his signature and to the possession of which journal in our opinion the Comptroller is entitled. We think it is fairly to be implied that this journal when authenticated by the signature of the secretary shall be taken as the official record of the proceedings of the Board of Commissioners of the Sinking Fund and that the abstract provided for in section 1546 is to be compiled from such journal by the Comptroller who has possession thereof. It seems to us, therefore, that the order of the Appellate Division should be modified so as to require the defendant Brady to publish an abstract of the proceedings of the Board of Commissioners of the Sinking Fund pursuant to sections 1526 and 1546 of the Greater New York charter as prepared by the Comptroller of the City of New York from the journal of the proceedings of said Board required

by him to be kept, as authenticated by the Secretary of said Board, since the 17th day of February, 1923, and thereafter, and that as so modified said order be affirmed, without costs.

The third appeal involves the alleged right of the Comptroller to compel the *City Record* to publish a calendar of the proceedings to be had before the Board of Commissioners of the Sinking Fund, prepared by himself. We agree with the Appellate Division that there is no provision which authorizes the Comptroller to make and compel publication of such a calendar, and, therefore, this order should be affirmed, with costs.

CARDOZO, POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Ordered accordingly.

